IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

JAMES LOUIS LEE,

    Plaintiff,

v.                                      Civil Action No. **3:08CV161**

PATRICK GURNEY, *et al.*,

    Defendants.

**MEMORANDUM OPINION**

Plaintiff, a Virginia inmate infected with hepatitis C, filed this action under 42 U.S.C. § 1983. Plaintiff named as defendants: Dr. Levester Thompson, a physician at Nottoway Correctional Center ("NCC"); Patrick Gurney, the former Assistant Warden of NCC; Fred Schilling, the Health Services Director of the Virginia Department of Corrections ("VDOC"); and Dr. Howard Stephens, the Chief Physician for VDOC.[1] The matter is before the Court on the motion for summary judgment by the one remaining defendant, Dr. Thompson.

**I. Pertinent Procedural History**

A.    **Prior Dispositive Motions by Dr. Thompson**

By Memorandum Opinion and Order entered on September 30, 2009, the Court denied Dr. Thompson's motion to dismiss the complaint. *Lee v. Gurney*, No. 3:08CV161, 2009 WL 3208712, at *3 (E.D. Va. Sept. 30, 2009) ("*Lee I*"). By Memorandum Opinion and Order entered on September 23, 2010, the Court denied without prejudice the prior motion for summary

---

[1] Plaintiff also named Prison Health Services ("PHS") as a defendant. Plaintiff, however, agreed to the dismissal of all claims against PHS. By Order entered on July 30, 2009, all claims against PHS were dismissed.

judgment filed by Dr. Thompson because, *inter alia*, Dr. Thompson's declaration, which he attached to that motion, did not bear a signature page and Plaintiff represented that he had never received any portion of Dr. Thompson's declaration.

### B. Prior Motion for Summary Judgment Filed by Dr. Thompson's Codefendants

By Memorandum Opinion and Order entered on September 30, 2009, the Court granted the motion for summary judgment filed by Gurney, Schilling, and Stephens and dismissed all claims against those defendants. *Lee v. Gurney*, No. 3:08CV161, 2009 WL 3208715, at *6 (E.D. Va. Sept. 30, 2009) ("*Lee II*"). In his present motion for summary judgment, Dr. Thompson relies heavily upon the summary judgment material submitted by Gurney, Schilling, and Stephens. Additionally, Plaintiff opposes Dr. Thompson's motion for summary judgment with many of the same materials that he offered in opposition to the motion for summary judgment filed by Gurney, Schilling, and Stephens. Therefore, the Court's prior opinion in *Lee II* figures prominently in the Court's present ruling.

### C. The Claim for Relief in the Complaint

In his Complaint, Plaintiff contends that Dr. Thompson denied him adequate medical care in violation of the Eighth Amendment.[2] Specifically, Plaintiff asserts that Dr. Thompson has denied him adequate treatment for his hepatitis C. Additionally, Plaintiff asserts that

---

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

2

Dr. Thompson violated his rights by failing to vaccinate Plaintiff against hepatitis A and B.[3] Plaintiff demands monetary damages and injunctive relief.

## II. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless, the nonmoving party cannot

---

[3] In opposition to Dr. Thompson's motion for summary judgment, Plaintiff swears that he suffers from abdominal and back pain. The Court previously admonished Plaintiff that his Complaint did not fairly raise a claim that the defendants were liable to him because they were indifferent to his pain. *Lee II*, 2009 WL 3208715, at *1 n.3. The Court advised Plaintiff that "[t]o the extent he wishes to amend his complaint to add such a claim, he must file an appropriate motion along with a proposed amended complaint." *Id.* Nevertheless, Plaintiff has not moved to amend his Complaint to add such a claim.

3

"'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (*quoting Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)).

In support of his motion for summary judgment, Dr. Thompson relies upon his own affidavit. Additionally, Dr. Thompson relies upon the affidavits and evidence submitted by Defendants Gurney, Schilling, and Stephens in support of their motion for summary judgment and adopts the Court's summary of pertinent facts in resolving his codefendants' motion for summary judgment. *See Lee II*, No. 3:08CV161, 2009 WL 3208715, at *3–5 (E.D. Va. Sept. 30, 2009). Plaintiff has responded to Dr. Thompson's motion for summary judgment by submitting his own affidavit and by swearing to his initial complaint under penalty of perjury. (Compl. 28.) Plaintiff also generally references documents he submitted in opposition to the motion for summary judgment by Gurney, Schilling, and Stephens. (Pl.'s Aff. Opp'n Summ. J. (Docket No. 122) 4.)

In response to the motion for summary judgment filed by Gurney, Schilling, and Stephens, Plaintiff had submitted sworn statements, copies of correspondence, medical articles, and a publication from the American Civil Liberties Union, which criticizes the quality of medical care within the VDOC (the "ACLU Report"). At this stage, the Court is tasked with assessing whether Plaintiff "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added).

To that end, any affidavit or sworn statement in support of Plaintiff's claims "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Thus, as this Court previously observed in granting the motion for summary judgment filed by Gurney, Schilling, and Stephens, "Plaintiff's sworn testimony as to what he believes constitutes the appropriate, accepted standard of medical care for hepatitis C is simply not admissible." *Lee II*, 2009 WL 3208715, at *2 (*citing Bell v. Kolongo*, No. 1:03cv00501, 2004 WL 3247156, at *4 (E.D. Va. Oct. 25, 2004)). Furthermore, "Plaintiff is not competent to testify that his hepatitis C is the cause of any abdominal pain, back pain, or chronic fatigue or that a certain treatment would alleviate these symptoms." *Id.* (*citing Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001)). "Plaintiff's submission of medical articles and the ACLU report fare[d] no better." *Id.* at *3. Plaintiff failed "to offer any theory under which the material contained in those documents, or his general sworn adoption of the facts contained in those documents, are admissible." *Id.* (citing cases).[4] In light of the foregoing submissions and principles, the following facts are established for purposes of the motion for summary judgment.

### III. Summary of Pertinent Facts

In May of 2006, Plaintiff was informed by the Nottoway Correctional Center medical staff that he was infected with hepatitis C. Shortly thereafter, Plaintiff met with Dr. Thompson to discuss possible treatment for this disease. Dr. Thompson informed Plaintiff that he did not

---

[4] "Under the plain language of Federal Rules of Evidence 803(18), learned treatises are only admissible for the truth of the matter asserted 'to the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination' and if they have been established as a reliable authority by an expert witness or judicial notice." *Moore v. Matthews*, 445 F. Supp. 2d 516, 529 n.13 (D. Md. 2006) (*quoting* Fed. R. Evid. 803(18)). Because Plaintiff's articles are not accompanied by the affidavit of any expert, they are not admissible as evidence. *Id.*; *Cornelius v. Wilkinson*, No. 1:05-CV-00545, 2006 WL 2404136, at *5 (N.D. Ohio Aug. 18, 2006) (refusing to consider medical articles on summary judgment that were not accompanied by an affidavit from an expert).

qualify for the treatment under the pertinent VDOC guidelines, and "plaintiff had to wait until his [ALTs] or liver enzyme levels reach twice normal before he could be considered for the treatment he needed." (Compl. ¶ 2 (brackets in original).) Dr. Thompson did not vaccinate Plaintiff against hepatitis A or B and told Plaintiff, "'[Y]ou do not need them.'" (*Id.* ¶ 3.)

On July 18, 2006, Plaintiff filed a grievance wherein he complained that he had not received treatment for his "debilitating illness." (Second Mot. for Summ. J. (Docket No. 118) Ex. 3 ("Gurney Aff.") Encl. B.) Defendant Gurney investigated and responded to Plaintiff's grievance. Defendant Gurney's investigation revealed that Plaintiff had been diagnosed with hepatitis C, but that according to Dr. Thompson, Plaintiff's liver enzymes were not in the range to warrant a liver biopsy. Dr. Thompson further ordered that Plaintiff's liver enzymes be retested in three months to monitor Plaintiff's disease. Based upon this information, Defendant Gurney determined that Plaintiff's grievance was unfounded. Plaintiff appealed that determination to Defendant Schilling, the Health Services Director for the VDOC.

Defendant Schilling provides the second tier response to any grievance regarding medical treatment. Before Defendant Schilling provides any response regarding medical treatment, Dr. Stephens, the Chief Physician for the VDOC investigates the matter. Dr. Stephens then drafts the initial response to the grievance. The response is then formalized and signed by Defendant Schilling. Defendant Schilling represents that "[t]he Level II response that I sign always follows the final decision that has been drafted by the appropriate person (Chief Physician, Chief Dentist, etc.). I do not substitute my own judgment or decision for that of the Chief Physician . . . ." (Second Mot. for Summ. J. Ex. 5 ¶ 6.) In this case, Dr. Stephens's investigation revealed that no course of treatment was warranted or had been ordered for Plaintiff's hepatitis C. Therefore,

6

relying upon the information provided by Dr. Stephens, Defendant Schilling determined that Plaintiff's grievance was unfounded.

Dr. Stephens offers a fulsome explanation for his assessment that Plaintiff did not and does not require treatment for his hepatitis C. Dr. Stephens explains that because of the risks and benefits associated with hepatitis C treatment, the VDOC has established some general guidelines for treatment of inmates. (Second Mot. for Summ. J. Ex. 4 ("Stephens Aff.") ¶ 4; *id.* Encl. A ("Hepatitis C Guidelines").) Specifically, Dr. Stephens notes that "[o]nly a minority of patients with chronic hepatitis C virus respond to Interferon and Ribavirin therapy. Screening of candidates occurs before initiating therapy." (Stephens Aff. ¶ 4.) Although treatment can reduce the possible increased risk of cirrhosis and liver cancer associated with hepatitis C, "available medication treatments for hepatitis C infection are fraught with complications. Side effects can be incapacitating, and even fatal. . . . For these reasons, the VDOC strives to select those individuals most likely to benefit from, and least likely to be harmed by, the treatment." (*Id.* ¶ 7.)

Dr. Stephens swears that the decision not to treat Plaintiff's hepatitis C was and is based on medical need, not cost. (*Id.* ¶ 9.) Dr. Stephens specifies:

> Lee's disease has not yet progressed to a point at which treatment is medically warranted or prudent. Lee does not meet the criteria for treatment for hepatitis C because his liver enzymes (ALT) are less than twice normal. The enzymes correlate with the disease activity. Studies have shown that if the liver enzymes (ALT) are less than two times normal it is unlikely that the individual has severe disease. Lee, and other inmates with hepatitis C, are monitored every six months. If Lee's liver enzymes progress to more than twice normal (normal being 0–40), indicating progression of the disease, then we would proceed with the next step—a liver biopsy.

(*Id.* at ¶ 8.)[5] Since 2006, Plaintiff's liver enzymes have been monitored. Although Plaintiff's enzyme levels were slightly elevated, they had not reached a level that indicated a progression of the disease to the point where a liver biopsy was warranted.[6]

In June of 2007, Dr. Stephens responded to a letter written by a prison advocacy group, which inquired regarding Plaintiff's need for treatment. Dr. Stephens's response is somewhat confusing, but he ultimately concludes that further evaluation was necessary before Plaintiff could receive treatment for hepatitis C. Dr. Stephens states:

> I have reviewed James V. Lee's medical record and currently he does meet guidelines for treatment of hepatitis C. Within two months liver specialists at Virginia Commonwealth University Health System will begin evaluating and treating our inmates who have hepatitis C. If he qualifies for treatment under the liver specialists' guidelines James Lee will receive treatment for hepatitis C.

(Pl.'s Submission Material Documentary Evidence (3) (Docket No. 53) Ex. DD.)

At some point thereafter, Plaintiff wrote to Dr. Stephens and complained about the lack of treatment for his hepatitis C and the discomfort he was experiencing.[7] On September 5, 2007, Dr. Stephens responded that his laboratory tests did not indicate that Plaintiff's illness had

---

[5] The Hepatitis C Guidelines indicate that if an inmate's liver biopsy indicates that if he or she qualifies for Peg-Intron/Ribavirin treatment, prior to initiating such treatment, the inmate should be offered hepatitis A and hepatitis B vaccines. (Hepatitis C Guidelines 6.)

[6] Plaintiff's lab reports from June of 2008 and November of 2006 reflect an ALT of 63 and 59 respectively. (Pl. Aff. & Decl. of Lab Reports (Docket No. 29) at 3, 4.)

[7] Plaintiff has submitted a copy of Dr. Stephens's response to Plaintiff's letter. Plaintiff, however, has not submitted the letter he wrote to Dr. Stephens or clearly articulated what he complained about in that letter. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("The plaintiff still has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))).

8

progressed to the that point that a liver biopsy was appropriate. (Pl.'s Submission Material Documentary Evid. (4) (Docket No. 54) Ex. E.) Dr. Stephens advised Plaintiff that if he was experiencing discomfort in his abdomen, he should sign up for sick call and he would be evaluated by Dr. Thompson.[8] (*Id.*)

Dr. Thompson generally agrees with Dr. Stephens's conclusion that Plaintiff's disease has not yet progressed to a point at which treatment is medically warranted or prudent. (Second Mot. Summ. J. Ex. 1 ("Thompson Decl.") ¶ 8.) Specifically, because Plaintiff's enzyme level "was only minimally out of range . . . he did not therefore have an illness that was so significant as to require treatment." (*Id.* ¶ 9.) Dr. Thompson further avers that Plaintiff's "hepatitis C is not so severe that the lack of treatment causes him to face substantial risk of serious harm." (*Id.* ¶ 10.)

## IV. Eighth Amendment Analysis

In order to survive summary judgment, Plaintiff must demonstrate that Dr. Thompson was deliberately indifferent to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (*citing Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). "Deliberate indifference requires a showing that the

---

[8] Plaintiff does not state whether he followed Dr. Stephens's advice in the September 5, 2007 letter and requested an examination by Dr. Thompson. Instead, Plaintiff generally swears that "[h]e has yet to be even remedially treated for these conditions or examined in any meaningful way to determine the cause of these acute pains during the past two years." (Pl.'s Submission Material Documentary Evid. (4) ¶ 3.) Such vague statements are of no use in establishing any relevant fact, where Plaintiff's own submissions reflect Dr. Thompson continued to monitor Plaintiff's condition through blood work. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (observing that "[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment") (alterations in original; internal quotation marks omitted).

defendant[] . . . actually knew of and ignored [an inmate's] serious need for medical care." *Young v. City of Mount Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001) (*citing White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997)). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (*citing Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

Furthermore, absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (*citing Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)). Thus, "[t]he Eighth Amendment's prohibition on cruel and unusual punishment is not violated when a doctor simply resolves 'the question whether additional diagnostic techniques or forms of treatment is indicated.'" *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) (*quoting Estelle*, 429 U.S. at 107). In general, "[a] medical professional . . . may be held to have displayed deliberate indifference only if 'the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (*quoting Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)).

A.  **Treatment for Hepatitis C**

Plaintiff fails to demonstrate that Dr. Thompson was deliberately indifferent to any need for treatment for hepatitis C. Dr. Stephens and Dr. Thompson concluded that the risks posed by treatment or testing of Plaintiff's hepatitis C outweighed the possible benefits to Plaintiff from treatment. Plaintiff's disagreement with these medical decisions is insufficient to demonstrate that Dr. Thompson acted with deliberate indifference to his serious medical needs. *See Johnson v. Doughty*, 433 F.3d 1001, 1013–14 (7th Cir. 2006); *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999); *Motley v. Harris*, 1:09cv797 (LMB/IDD), 2010 WL 3430820, at *4 (E.D. Va. Aug. 27, 2010) (awarding summary judgment to doctor where doctor concluded that inmate "did not have high enough liver enzyme levels . . . and thus plaintiff did not qualify for the treatment" for his hepatitis C); *Cota v. Johnson*, No. 7:03CV00782, 2004 WL 3334011, at *6 (W.D. Va. Nov. 5, 2004) ("The reason [the inmate] was denied a liver biopsy was not due to 'deliberate indifference' but instead due to no medical necessity yet requiring him to have one.").

Moreover, contrary to Plaintiff's suggestion, Dr. Thompson's refusal to order more testing, including a liver biopsy, is not a substantial departure from the accepted standard of care. *See Brown v. Jones*, 171 F. App'x 40, 41 (9th Cir. 2006) (affirming grant of summary judgment where inmate's "relatively normal liver enzyme levels showed [hepatitis C] was stable and drug treatment was unnecessary"); *Johnson v. Million*, 60 F. App'x 548, 549 (6th Cir. 2003) (quoting doctor for the proposition that "it was 'standard clinical practice not to perform liver biopsies or treat with interferon and ribavirin those Hepatitis C patients whose ALT values remain normal'"); *Howze v. Hickey*, No. 10-CV-094-KKC, 2011 WL 673750, at *9 (E.D. Ky. Feb. 17, 2011) ("Candidates for interferon therapy typically have liver enzyme counts one and one-half

11

times or greater than normal."); *Young v. Nguyen*, No. 3:07-cv-551-J-32MCR, 2009 WL 2025181, at *4–5 (M.D. Fla. July 9, 2009) (granting summary judgment to doctors who concluded that inmate did not qualify for further hepatitis C treatment or testing where inmate's ALT levels were not twice normal); *Hollis v. Dir. of Corr.*, 560 F. Supp. 2d 920, 927 (C.D. Cal. 2008).[9]

Furthermore, Plaintiff has failed to demonstrate that he is entitled to injunctive relief. In order to survive summary judgment, Plaintiff was required to "come forward with evidence from which it can be inferred that the defendant-officials . . . are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). Plaintiff has not demonstrated Dr. Thompson is disregarding an objectively intolerable risk of harm. Rather, the evidence reflects that Plaintiff's liver enzymes are regularly monitored to assess the progress, if any, of his disease. Plaintiff fails to demonstrate that he currently faces an "objectively intolerable risk of harm" from the lack of additional medical intervention at this time with respect to Plaintiff's hepatis C. *Id.*

### B. Failure to Vaccinate Plaintiff With Respect to Hepatitis A and B

Plaintiff fails to demonstrate that he has sustained any injury because of the failure of Dr. Thompson to immunize him against hepatitis A and B. *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) ( "If a prisoner has not suffered serious or significant physical or mental

---

[9] Plaintiff also complained that Dr. Thompson had failed to provide Plaintiff with counseling and literature related to hepatitis C. The record demonstrates that Plaintiff has ample access to information relating to his hepatitis C. Furthermore, there is no evidence that Plaintiff has sustained any injury from the lack of hepatitis C-related counseling or literature.

12

injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment."). Moreover, while Plaintiff may desire these vaccinations, Dr. Thompson has concluded, at this juncture, Plaintiff does not require such vaccinations. *See McDonald v. Bayer*, 51 F. App'x 677, 678 (9th Cir. 2002) ("The district court also properly found that the [prison doctor's] failure to vaccinate [hepatitis C positive inmate] against Hepatitis A and B amounted only to a difference in medical opinion about the proper course of treatment." (*citing Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir 1996))); *Zimmerman v. Prison Health Servs., Inc.*, 36 F. App'x 202, 203–04 (7th Cir. 2002) (concluding that doctor did not disregard an excessive risk to hepatitis C positive inmate's health when he refused to innoculate inmate against hepatitis A based on the lack of a hepatitis A infection in the prison system). Plaintiff fails to demonstrate that Dr. Thompson is "knowingly and unreasonably disregarding an objectively intolerable risk of harm" by not vaccinating Plaintiff against hepatitis A and B. Accordingly, Plaintiff's claims will be DISMISSED. Dr. Thompson's motion for summary judgment (Docket No. 118) will be GRANTED. The action will be DISMISSED.

An appropriate Order will issue.

Dated: 7/8/11
Richmond, Virginia

/s/ _____
John A. Gibney, Jr.
United States District Judge